# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| DR. FABRE FORD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:24-cv-02405-SHM-atc |
| | ) |
| FAYETTE COUNTY, TENNESSEE, | ) |
| SHERIFF BOBBY RILES, MATTHEW | ) |
| SALAMON, and RANDY COLLINS, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

Plaintiff sues Defendants for violations of her Fourth and Fourteenth Amendment rights, false arrest and false imprisonment, malicious prosecution, intentional infliction of emotional distress ("IIED"), and defamation.

Before the Court are Defendants' Motions to Dismiss. (ECF Nos. 18, 20.) Defendants Fayette County, Sheriff Bobby Riles, and Matthew Salamon have jointly filed a Motion to Dismiss. (ECF No 18.) Defendant Randy Collins has filed a Motion to Dismiss individually. (ECF No. 20.) Plaintiff has responded in opposition to both Motions and seeks leave to amend her Complaint. (ECF Nos. 21-22.) Defendants have replied and oppose amendment. (See ECF Nos. 23, 24.) Defendants' Motions to Dismiss are **GRANTED IN PART AND DENIED IN PART**. Plaintiff's request to amend is **DENIED**.

## I.    Background

Plaintiff filed her Complaint against Defendants on June 13, 2024. (ECF No. 1.) Plaintiff sues Defendants under 42 U.S.C. § 1983 for false arrest and malicious prosecution in violation of the Fourth and Fourteenth Amendments. (Id. ¶¶ 32-57.) Plaintiff is pursuing individual, supervisory, and municipal theories of liability. (See id.) Plaintiff also brings claims under Tennessee law for false arrest and false imprisonment, malicious prosecution, outrageous conduct inflicting emotional distress, and defamation. (Id. ¶¶ 58-69.) The facts relevant to Defendants' Motions are alleged in Plaintiff's Complaint. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Plaintiff, Dr. Fabre Ford, has been Principal of Southwest Elementary School in Whiteville, Tennessee, for more than seven years. (ECF No. 1 ¶ 20.) She previously served as the Assistant Principal of that school and as a high school history teacher during her nearly twenty-year career in education. (Id.) She brings this action against Fayette County, Tennessee; Bobby Riles, Sheriff of Fayette County; Matthew Salamon, an Investigator for the Sheriff's Office; and Randy Collins, a Deputy in the Sheriff's Office working as a "School Resource Officer" ("SRO") at Southwest Elementary. (Id. ¶¶ 21-24.)

2

Plaintiff and SRO Collins have had a contentious relationship since Collins began working at Southwest Elementary. (See id. ¶ 4.) Plaintiff alleges that Collins attempted to intimidate her and believed that he, not Plaintiff, "was in charge of the school." (See id.)

On February 2, 2024, an elementary school student identified as "BB" was brought to teacher Demetrius Bradford's classroom because BB was "acting out in his assigned classroom." (See id. ¶ 5.) The student struck Bradford in the head with a Stanley cup. (See id. ¶ 6.) Bradford notified Plaintiff of the incident and said he was not injured and did not wish to press any charges against the child. (See id. ¶ 7.) Plaintiff notified the Fayette County School Superintendent and disciplined the student with a four-day out-of-school suspension and one additional day of in-school suspension. (See id. ¶ 8.)

On February 7, 2024, Defendant Collins had become aware of the incident and asked Plaintiff why she had not notified him. (See id. ¶ 9.) Plaintiff "stated that she had already taken care of everything and that he didn't need to worry about anything." (See id.) Collins was "enraged" by this and let Plaintiff know that he had already started his own investigation, interviewed the teachers involved, and "essentially threatened Plaintiff by saying something to the effect of 'she better do what he says and he

doesn't care about the school system policies and procedures and/or federal or state law.'" (See id. ¶ 410.)

Two days later, on February 9, 2024, the Fayette County School Superintendent called Plaintiff and told her that Investigator Salamon from the Fayette County Sheriff's Office wanted to speak with her. (See id. ¶ 11.) Defendant Salamon interviewed Plaintiff at the Sheriff's Office and "essentially tried to coerce and threaten the Plaintiff into violating the school system policies and procedures and/or violate federal and/or state law." (See id.).

On February 12, 2024, ten days after the initial incident, an Affidavit of Complaint was filed against Plaintiff in Fayette County General Sessions Court, charging her with violating Tenn. Code Ann. ("T.C.A.") § 39-15-503, "Tamper or Fabricate Evidence." (See id. ¶ 12; ECF No. 1-6.) She was arrested, "paraded...through the school for all of the staff and students to view," and handcuffed. (See ECF No. 1 ¶ 12.)

The next day, February 13, 2024, the Sheriff's Office issued its first press release about Plaintiff in an alleged "nefarious attempt to disparage as well as humiliate" her. (See id. ¶ 13.) Although the press release says that Plaintiff was charged with "Tampering With or Fabricating Evidence," it also cites T.C.A. § 39-13-503, Tennessee's statute governing the crime of rape. (See id. ¶ 13; ECF No. 1-7.) The press release claims that Plaintiff

"interfered with conducting interviews." (See ECF No. 1 ¶ 14.)
Plaintiff argues that it implied she was also charged with
violating T.C.A. § 49-6-4301, which requires school officials to
report assault and battery offenses committed by students, which
she was not in the original Affidavit of Complaint. (See id.)

As a consequence of Defendants' actions, on February 14, 2024,
Plaintiff's TSA PreCheck eligibility was revoked because of her
new "criminal history." (See id. ¶ 13; ECF No. 1-7.) That has
"substantially interfered with her right to travel as well as enjoy
life." (See ECF No. 1 ¶ 13; ECF No. 1-7.)

Plaintiff first appeared in court on February 21, 2024. (See
id. ¶ 15.) There, Plaintiff discovered a sticky note on the court
file that read: "Amended Affidavit has been turned in, but cannot
be entered. More research being done." (See id.)

On March 28, 2024, Plaintiff returned to court, the prosecutor
dropped all charges, and a nolle prosequi was entered. (See id. ¶
17.) Only then did Plaintiff learn that an Amended Affidavit of
Complaint had been filed on February 21, 2024, although it was
never served on her. (See id.) The Amended Affidavit was "directly
contrary" to Defendants' first Affidavit and their February 13
press release, and contained "substantially different factual
allegations." (See id.)

Although the charges were eventually dropped, Plaintiff alleges she suffers from irreversible personal and professional reputational damage and severe and ongoing emotional distress and trauma from Defendants' actions. (See id. ¶ 18.)

Plaintiff alleges that all actions taken by Defendants Collins and Salamon were ratified and condoned by the Sheriff, that Fayette County is responsible for those unlawful actions because of the Sheriff's ratification and because it was on notice but failed to train and supervise Collins and Salamon while they acted on behalf of the County, and that many of the actions alleged were recorded on body-worn cameras or other surveillance video that Plaintiff's counsel asked the Sheriff's Office to preserve in February 2024.

## II. Jurisdiction

Plaintiff alleges Defendants violated her Fourth and Fourteenth Amendment constitutional rights secured under 42 U.S.C. § 1983. The Court has federal question jurisdiction over those claims pursuant to 28 U.S.C. § 1331.

Plaintiff also alleges causes of action under Tennessee law for false arrest and false imprisonment, malicious prosecution, outrageous conduct emotional distress, and defamation. A district court can exercise supplemental jurisdiction over state claims, regardless of the litigants' citizenship, if the court has federal-

6

question jurisdiction over at least one claim that is "so related" to the state claims "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Court has supplemental jurisdiction over Plaintiff's related claims pursuant to 28 U.S.C. § 1367 because the Court has federal question jurisdiction over Plaintiff's § 1983 claims and Plaintiff's state and federal claims "derive from a common nucleus of operative fact." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966).

## III. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a plaintiff must allege facts that, if accepted as true, are sufficient 'to raise a right to relief above the speculative level,' and to state a 'claim to relief that is plausible on its face.'" Kovalchuk v. City of Decherd, 95 F.4th 1035, 1037 (6th Cir. 2024) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The plaintiff must provide sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ctr. for Bio-Ethical Reform, Inc. v. Napolitano, 648 F.3d 365, 369 (6th Cir. 2011)).

The Court must "view the complaint in the light most favorable to [Plaintiff] as the nonmovant, accepting the complaint's well-

pleaded factual allegations as true and drawing all reasonable
inferences in favor of [Plaintiff]." Zakora v. Chrisman, 44 F.4th
452, 464 (6th Cir. 2022). However, the Court "need not accept as
true legal conclusions or unwarranted factual inferences, and
conclusory allegations or legal conclusions masquerading as
factual allegations will not suffice." Philadelphia Indem. Ins.
Co. v. Youth Alive, Inc., 732 F.3d 645, 649 (6th Cir. 2013)
(quoting Terry v. Tyson Farms, Inc., 604 F.3d 272, 275–76 (6th
Cir. 2010)).

## IV. Law and Analysis

### A. Amending the Complaint

Plaintiff argues that she has met the requirements of a well-
pleaded complaint on each of her federal and state law claims.
Plaintiff requests, however, that the Court delay ruling on
Defendants' Motions until further discovery can be completed.
Plaintiff is not entitled to discovery unless her Complaint
survives Defendants' Motions to Dismiss. See Kolley v. Adult
Protective Servs., 725 F.3d 581, 587 (6th Cir. 2013).

In the alternative, Plaintiff seeks leave of Court to amend
her Complaint "to more specifically state her claims in even more
detail and/or after the completion of discovery." (ECF Nos. 21-1
at 11; 22-1 at 10-11.) Plaintiff cites the standard in Federal
Rule of Civil Procedure 15(a) that leave to amend should be "freely

8

given when justice so requires," and the Sixth Circuit test turning on "substantial prejudice to the opposing party." Lawson v. Truck Drivers, Chauffeurs & Helpers, Loc. Union 100, 698 F.2d 250, 256 (6th Cir. 1983).

Defendants oppose Plaintiff's attempt to amend her Complaint and cite cases to support their proposition that Plaintiff's amendment request is inappropriate in its present posture, as a paragraph in each of her responses to Defendants' Motions to Dismiss. (See ECF Nos. 21-1 at 11; 22-1 at 10-11; 23 at 5; 24 at 6.) Sixth Circuit precedent establishes that, given the circumstances of Plaintiff's request, it would be within the Court's discretion to deny leave to amend before ruling on Defendants' Motions to Dismiss. See Kuyat v. BioMimetic Therapeutics, Inc., 747 F.3d 435, 444-45 (6th Cir. 2014); Louisiana Sch. Employees' Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 486 (6th Cir. 2010); PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 698-700 (6th Cir. 2004). Defendants, citing this precedent, argue that the Court should exercise its discretion to deny Plaintiff's request. (ECF Nos. 23 at 5; 24 at 6.)

Plaintiff inserts her request to amend at the end of her response briefs, "almost as an aside," and does not attach her proposed amended pleading. Begala v. PNC Bank, Ohio, Nat'l Ass'n, 214 F.3d 776, 784 (6th Cir.2000). Local Rule 15.1 requires that a

"motion to amend or supplement a pleading must include as an appended exhibit the signed proposed amended or supplemental pleading." LR 15.1(a). Plaintiff did not file a proposed amended pleading with her request, and she has not filed one subsequently.

Because Plaintiff's request for leave to amend her Complaint is improperly raised and does not comply with the Local Rules, it is **DENIED**.

### B.    Claims against Fayette County

#### 1.    Federal Municipal Liability Claim

To establish liability under § 1983 against a municipal defendant like Fayette County, Monell requires plaintiffs to show that a policy or custom of the municipality was the "moving force" of the constitutional violation. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978). A plaintiff may prove the existence of such a policy or custom by showing: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013)

### a.    Failure to Train

Here, Plaintiff alleges that Fayette County failed to adequately train and supervise its officers. (ECF No. 1 ¶¶ 56-57.) A failure-to-train claim requires a plaintiff to show "prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Id. (quoting Miller v. Sanilac Cnty., 606 F.3d 240, 255 (6th Cir. 2010) and Fisher v. Harden, 398 F.3d 837, 849 (6th Cir.2005)).

Plaintiff alleges that "Defendants were aware and thereby on notice of a repeated pattern of unconstitutional and unprofessional behavior on the part of Defendant Collins in failing to conduct reliable and trustworthy investigations and in failing to provide reliable and trustworthy testimony before judicial officers." (ECF No. 1 ¶ 57.) Essentially, Plaintiff alleges that Collins had lied to judicial officers before he lied to secure a warrant for Plaintiff's arrest, that prior perjury led to violations of other individuals' constitutional rights, Sheriff Riles and Investigator Salamon knew of Collins' behavior but failed to intervene, and that failure caused Plaintiff's harm.

Defendants argue that these allegations are insufficiently factual to state a plausible claim. At this juncture, it is unclear

11

whether Plaintiff's failure-to-train theory of liability can withstand scrutiny. However, because Plaintiff advances an alternate, plausible theory that would allow her Monell claim to proceed, the Court need not reach a conclusion on this theory of liability at this stage in the litigation.

### b.  Official Ratification

In addition to her failure-to-train allegation, Plaintiff alleges that Sheriff Riles was "aware that no probable case existed to support felony criminal charges," but "ratified" the arrest and prosecution.

If Sheriff Riles, the "official with final decision making authority" for the Fayette County Sheriff's Office, "ratified illegal actions," Fayette County may be liable. Burgess, 735 F.3d at 478. To prevail on her ratification theory, Plaintiff must show that a "deliberate choice to follow a course of action is made from among various alternatives by the official...responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986).

Then, Plaintiff must show that this course of action was "the moving force behind or cause of the plaintiff's harm" Burgess, 735 F.3d at 479 (citing Pembaur, 475 U.S. at 484-85 (finding Monell liability where the final decision maker ordered deputies to enter plaintiff's medical clinic in violation of plaintiff's Fourth

Amendment rights) and Moldowan v. City of Warren, 578 F.3d 351, 394 & n. 20 (6th Cir. 2009) (affirming denial of summary judgment on Monell claim where plaintiff alleged that final policymaker directed the destruction of material evidence)).

Plaintiff alleges that Sheriff Riles knew that Collins and Salamon had lied to secure a warrant for Plaintiff's arrest and ratified that conduct, ordered or ratified the decision for the Sheriff's Deputies to arrest Plaintiff at the elementary school despite knowing the deputies lacked probable cause, and published a press release bearing his name knowingly adopting the fabrications. (See ECF No. 1 ¶¶ 10-13, 47) Based on the facts Plaintiff alleges, Riles had the authority and opportunity to take alternate courses of action during the course of the investigation, prosecution, and publicity campaign. See Pembaur, 475 U.S. at 483. That course of conduct is plausibly the "moving force" behind Plaintiff's harm. See Burgess, 735 F.3d at 479.

The facts alleged at this stage are sufficient to state a plausible claim. See Kovalchuk, 95 F.4th at 1037. Defendant Fayette County's Motion to Dismiss Plaintiff's Municipal Liability § 1983 claim is **DENIED.**

### 2.  State Municipal Liability Claims

Generally, the State of Tennessee cannot be sued unless authorized by the Tennessee General Assembly. Davidson v. Lewis

13

Bros. Bakery, 227 S.W.3d 17, 19 (Tenn. 2007). Courts will not conclude that the General Assembly has waived Tennessee's sovereign immunity unless the statute at issue demonstrates that intent unambiguously. Id.

The "State of Tennessee" includes "the departments, commissions, boards, institutions and municipalities of the State." Id. (quoting Metro. Gov't of Nashville & Davidson Cnty. v. Allen, 415 S.W.2d 632, 635 (Tenn. 1967)).

The Tennessee Governmental Tort Liability Act ("TGTLA"), T.C.A. § 29-20-205, governs the waiver of sovereign immunity for state tort claims. Section 29-20-205 removes Tennessee government entities' immunity from suit for injuries "proximately caused by a negligent act or omission of any employee within the scope of his employment." Relevant here, government entities retain immunity from negligence claims if the underlying injury "arises out of...civil rights." See id. § 29-20-205(2). The TGTLA's "civil rights" exception "has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution." Johnson v. City of Memphis, 617 F.3d 864, 872 (6th Cir. 2010). When the state law claim arises from the same facts and circumstances as the federal civil rights claim, the TGTLA's civil rights exception to the waiver of immunity mandates dismissal of the state claim.

See Partee v. City of Memphis, 449 Fed. Appx. 444, 448 (6th Cir. 2011).

Plaintiff's state tort claims arise from the same circumstances as her federal civil rights claim under § 1983. Because Plaintiff's state law claims arise out of civil rights, the TGLA's exception to the waiver applies and Fayette County is immune from those claims. See Partee, 449 Fed. Appx. at 448.

Sovereign immunity precludes Plaintiff from obtaining relief against Fayette County on her claims under Tennessee law. Defendant Fayette County's Motion to Dismiss Plaintiff's state tort claims is **GRANTED** and Plaintiff's state tort claims against Fayette County are **DISMISSED WITH PREJUDICE**. See Partee, 449 Fed. Appx. at 448; Kovalchuk, 95 F.4th at 1037.

### C.    Official Capacity Claims

Plaintiff brings claims against Sheriff Riles in both his official capacity as Fayette County Sheriff and in his individual capacity. Defendants argue that suing Riles in his official capacity is no different that suing Fayette County as a municipality, so that Plaintiff's official capacity claim is duplicative and should be dismissed as redundant.

Although dismissing the official-capacity claim will have no material affect on the litigation, Defendants are correct. "Official-capacity suits represent only another way of pleading an

action against an entity of which an officer is an agent." Everson
v. Leis, 556 F.3d 484, 493–94 n. 3 (6th Cir. 2009) (quoting Monell,
436 U.S. at 690 n. 55 (alterations omitted)). Where a plaintiff
brings a claim against both a municipal entity and an officer of
that entity in the officer's capacity, the official-capacity claim
is properly dismissed because it is "in actuality" a claim against
the municipal entity which itself is already a Defendant. See Faith
Baptist Church v. Waterford Twp., 522 F. App'x 322, 327-28 (6th
Cir. 2013).

The claim against Sheriff Riles in his official capacity is
**DISMISSED WITH PREJUDICE** because Fayette County itself is also a
Defendant in this action. See id.

### D.    Individual Capacity Federal Law Claims

Plaintiff's § 1983 claims allege that Defendants Riles,
Salamon, and Collins violated her constitutional rights under both
the Fourth and Fourteenth Amendments by falsely arresting and
maliciously prosecuting her. (ECF No. 1 ¶¶ 26-43.)

Defendants argue that Plaintiff's claims under the Fourteenth
Amendment should be dismissed because her claims of false arrest
and malicious prosecution are properly addressed only under the
Fourth Amendment. (ECF No. 18-1 at 13.) The Supreme Court has held
that, where pretrial deprivations of liberty are concerned, the
Fourth Amendment is the proper basis for relief, not the Fourteenth

Amendment's guarantee of substantive due process. <u>See</u> <u>Albright v.</u>
<u>Oliver</u>, 510 U.S. 266, 273-75 (1994). False arrest, or arrest
without probable cause, is a clearly established Fourth Amendment
right. <u>See</u> <u>Donovan v. Thames</u>, 105 F.3d 291, 298 (6th Cir. 1997).
"Freedom from malicious prosecution is a clearly established
Fourth Amendment right." <u>Webb v. United States</u>, 789 F.3d 647, 659
(6th Cir. 2015) (citing <u>Sykes v. Anderson</u>, 625 F.3d 294, 308 (6th
Cir. 2010)).

Because Plaintiff's constitutional claims under § 1983 are
clearly established under the Fourth Amendment, the Court will
analyze them under the Fourth Amendment, not the Fourteenth
Amendment's substantive due process guarantee. <u>See</u> <u>Albright</u>, 510
U.S. at 273-75. To the extent Plaintiff alleges claims under the
substantive due process clause of the Fourteenth Amendment, those
claims are **DISMISSED WITH PREJUDICE.** That dismissal does not affect
her claims under the Fourth Amendment.

As a final preliminary argument, Defendants argue that
Plaintiff's Complaint does not state a § 1983 claim against any of
the Defendants individually because she "lumps" the accusations.
(ECF Nos. 20-1 at 6-8.) Plaintiff argues that her allegations of
conduct by multiple individuals at points in her Complaint does
not mean those allegations lack specificity. (<u>See</u> ECF No. 21-1 at
5-6.) Plaintiff represents that the allegations against multiple

17

Defendants are alleged against each Defendant individually, and that Defendants are grouped together only to avoid repeating the same paragraphs with the name of the Defendant changed. (See id.)

Plaintiff "must state a plausible constitutional violation against each individual defendant——the collective acts of defendants cannot be ascribed to each individual defendant." Reilly v. Vadlamudi, 680 F.3d 617, 626 (6th Cir. 2012). Here, however, the Complaint as a whole permits the Court to connect the conduct of each Defendant to the violations alleged.

### 1. False Arrest Claim under § 1983

Forty-two U.S.C. § 1983 provides a cause of action for any person to obtain civil justice for deprivations of her constitutional rights committed by government actors under color of law.

A Fourth Amendment claim alleging false arrest under § 1983 requires a plaintiff to show that the arresting officer did not have probable cause to arrest her. See Fridley v. Horrighs, 291 F.3d 867, 872 (6th Cir. 2002). If the arrest was pursuant to a facially valid warrant, the plaintiff must show: "(1) that the officer applying for the warrant, either knowingly and deliberately or with reckless disregard for the truth, made false statements or omissions that created a falsehood[,] and (2) that such statements or omissions were material to the finding of

18

probable cause." Tlapanco v. Elges, 969 F.3d 638, 654 (6th Cir. 2020) (quoting Halasah v. City of Kirtland, 574 F. App'x 624, 629 (6th Cir. 2014)).

Plaintiff does not appear to dispute that the warrant was facially valid, and that the Tlapanco standard applies.

### a.    Defendants Riles and Salamon

To hold a supervisory official liable under § 1983 for the conduct of those the official supervises, the supervisor must have directly participated or "a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Combs v. Wilkinson, 315 F.3d 548, 558 (6th Cir. 2002) (quoting Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir. 1982)).

Plaintiff alleges that Sheriff Riles knew that Salamon and Collins were seeking to arrest and prosecute Plaintiff without probable cause and approved that course of conduct. As Defendants point out, Plaintiff is unable to provide smoking-gun evidence of Riles' knowledge and approval at this stage in the litigation. However, Riles issued a press release adopting Collins and Salamon's alleged lies. The high-profile nature of this case for Riles and the Sheriff's Office lends plausibility to Plaintiff's allegation that Riles was involved in the investigation, the initiation of the arrest, and the prosecution. Plaintiff's

allegations are sufficiently factual for the Court to draw the reasonable inference that Riles is liable for the misconduct alleged. See Kovalchuk, 95 F.4th at 1037.

Plaintiff alleges that Salamon supervised Collins and approved Collins' conduct. (See ECF Nos. 1-6; 1-9.) Salamon swore to both Affidavits of Complaint against Plaintiff. (See id.) Plaintiff alleges that, after Salamon had summoned her to the Sheriff's Office and "essentially tried to coerce and threaten the Plaintiff into violating the school system policies and procedures and/or violate federal and/or state law," Salamon applied for an arrest warrant knowing there was no probable cause. (See id. ¶ 11.) This alleged harassment and coercion to violate the law lend plausibility to the allegation that Salamon's sworn affidavit to secure the arrest warrant for Plaintiff was knowingly false and material to the finding of probable cause, as does the swift dismissal of the felony charge based on the affidavit. Tlapanco, 969 F.3d at 654.

### b. Defendant Collins

Plaintiff alleges that there was pre-existing hostility between her and Defendant Collins, that Defendant Collins became enraged after Plaintiff handled the Bradford incident without involving Collins, that Collins threatened Plaintiff, and that Collins initiated the investigation leading to Plaintiff's arrest

20

without probable cause for charges that were ultimately dropped.
Plaintiff alleges that Collins, one of the "Defendants," arrested
Plaintiff. (ECF No. 1 ¶ 35.)

Collins responds that the verbal threats and harassment that
Plaintiff alleges Collins directed toward her are insufficient to
support her claims. (ECF No. 20-1 at 5-6) However, Plaintiff does
not allege Collins' speech is a constitutional violation. The
alleged threats and harassment are probative of whether Collins
intentionally committed the other underlying constitutional
violations. The alleged harassment and hostility lend plausibility
to Plaintiff's other allegations that Collins initiated the
investigation, arrest, prosecution, and press campaign against her
with animosity and without probable cause.

Plaintiff has plead facts raising "more than a sheer
possibility that a defendant has acted unlawfully". Erie County,
Ohio v. Morton Salt, Inc., 702 F.3d 860, 867 (6th Cir. 2012).

### 2. Malicious Prosecution Claim under § 1983

A Fourth Amendment § 1983 claim alleging malicious
prosecution requires a plaintiff to show that:

(1) the defendant made, influenced, or participated in
the decision to prosecute the plaintiff; (2) there was
no probable cause for the prosecution; (3) as a
consequence of the legal proceedings, the plaintiff

suffered a deprivation of liberty apart from the initial

arrest; and (4) the criminal proceeding was resolved in

the plaintiff's favor.

France v. Lucas, 836 F.3d 612, 625 (6th Cir. 2016)

It is not disputed that the criminal proceeding was resolved

in Plaintiff's favor. (ECF No. 1 ¶ 17.) After her initial arrest,

Plaintiff "spent hours in jail." (Id. ¶ 25.) The Court has already

decided that Plaintiff plausibly alleges a lack of probable cause

for her arrest and prosecution. See supra IV.D.1. What is

materially in dispute is whether each Defendant "made, influenced,

or participated in the decision to prosecute the plaintiff."

France, 836 F.3d at 625.

The factual allegations against each Defendant, analyzed

above, largely apply again to this claim. Plaintiff plausibly

alleges that Defendant Collins initiated and pursued the criminal

investigation leading to Plaintiff's prosecution, not because he

believed there was probable cause, but because he had personal

animosity towards her. Plaintiff "enraged" him.

Salamon's involvement is the most clear. His name is on the

sworn Affidavits of Complaint leading to Plaintiff's arrest and

prosecution. (ECF Nos. 1-6; 1-9.) The Affidavits were sworn after

Salamon allegedly attempted to coerce Plaintiff to violate the law

and school policy.

As analyzed above, Plaintiff plausibly alleges that Defendant Riles participated in this high-profile case, allegedly ratifying and approving the prosecution, including obtaining a warrant without probable cause and making public Riles' approval of the allegedly false criminal accusations in a press release bearing his name.

The question for the Court is whether, considering all of the circumstances Plaintiff alleges, and drawing all reasonable inferences in the light most favorable to Plaintiff, it is plausible that Defendants are liable for the alleged unlawful conduct. Although more specific factual allegations would make Plaintiff's claims probable, her Complaint as a whole provides more than "threadbare recitals of the elements." See Iqbal, 556 U.S. at 678. Plaintiff sufficiently describes what she claims happened, such that her allegations of a claim to relief are plausible.

Because Plaintiff plausibly states claims to relief under § 1983 for false imprisonment and malicious prosecution, Defendants' Motions to Dismiss Plaintiff's individual capacity § 1983 claims are **DENIED.**

### E.   Individual Capacity State Law Claims

In exercising exercises supplemental jurisdiction over Plaintiff's state law claims, the Court applies Tennessee law. See

Super Sulky, Inc. v. U.S. Trotting Ass'n, 174 F.3d 733, 741 (6th
Cir. 1999) ("A federal court exercising supplemental jurisdiction
over state law claims is bound to apply the law of the forum state
to the same extent as if it were exercising its diversity
jurisdiction.").

### 1. False Arrest and False Imprisonment

In Tennessee, the tort of false arrest and false imprisonment
requires a plaintiff to show "(1) the detention or restraint of
one against his will and (2) the unlawfulness of such detention or
restraint." Coffee v. Peterbilt of Nashville, Inc., 795 S.W.2d
656, 659 (Tenn. 1990). The lawfulness of the arrest and detention
turns on whether "at the time of the arrest, the facts and
circumstances within the knowledge of the officers, and of which
they had reasonably trustworthy information, are sufficient to
warrant a prudent person in believing that the defendant had
committed or was committing an offense." State v. Bell, 429 S.W.3d
524, 530 (Tenn. 2014) (quoting State v. Echols, 382 S.W.3d at 277–
78 (Tenn. 2012) and Beck v. Ohio, 379 U.S. 89, 91 (1964)). To state
a false imprisonment claim when the arrest occurred pursuant to a
facially valid warrant, the Plaintiff must allege that the warrant
was obtained pursuant to a "process that is void," which deprived
Plaintiff of her liberty "without lawful justification." See
Sullivan v. Young, 678 S.W.2d 906, 909-10 (Tenn. Ct. App. 1984).

24

This claim turns on essentially the same analysis as Plaintiff's federal false imprisonment claim. Consistent with that analysis, Defendants' Motions to Dismiss Plaintiff's state false arrest and false imprisonment claim are **DENIED**. <u>See</u> <u>supra</u> IV.D.

### 2. Malicious Prosecution

The Tennessee tort of malicious prosecution requires a plaintiff to show that the defendant "(1) instituted a proceeding against him 'without probable cause,' (2) 'with malice,' and (3) that the proceeding 'terminated in the plaintiff's favor.'" <u>Mynatt</u> <u>v. Nat'l Treasury Emps. Union, Chapter 39</u>, 669 S.W.3d 741, 746 (Tenn. 2023) (quoting <u>Parrish v. Marquis</u>, 172 S.W.3d 526, 530 (Tenn. 2005) (overruled on other grounds)).

This claim turns on essentially the same analysis as Plaintiff's federal malicious prosecution claim. Consistent with that analysis, Defendants' Motions to Dismiss Plaintiff's state false arrest and false imprisonment claim are **DENIED**. <u>See</u> <u>supra</u> IV.D.

### 3. Intentional Infliction of Emotional Distress

To state a claim for IIED, or outrageous conduct, in Tennessee, plaintiffs must allege facts that show: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was so outrageous that it cannot be tolerated in a civilized society; and (3) the defendant's conduct resulted

in a serious mental injury to the plaintiff. See <u>Lourcey v. Estate</u> <u>of Scarlett</u>, 146 S.W.3d 48, 51 (Tenn. 2004) (citing <u>Bain v. Wells</u>, 936 S.W.2d 618, 622 (Tenn. 1997)). A case for IIED "is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" See <u>Jenkins v. Nashville Public Radio</u>, No. 3:02-cv-0179, 2005 WL 3358871 at *4 (M.D. Tenn. Dec. 9, 2005) (quoting Restatement (Second) of Torts § 46 cmt. d (1965).

Plaintiff alleges Riles, Salamon, and Collins individually abused the power of the state entrusted to them in their respective positions to arrest, jail, and criminally prosecute an elementary school principal because of personal animosity, not a good faith finding of probable cause that a crime had been committed. <u>See</u> <u>supra</u> IV.D.1-2 (analysis of the plausible factual allegations attributable to each Defendant).

The conduct alleged in the Complaint would lead an average member of the community to exclaim "outrageous!" See <u>Jenkins</u>, 2005 WL 3358871 at *4. Being targeted for arrest and prosecution because of law enforcement officers' personal animus rises above "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." <u>Odom v. Claiborne Cnty. Tenn.</u>, 498 S.W.3d 882, 887 (Tenn. Ct. App. 2016) (quoting Restatement § 46 cmt. d). Defendants' Motions to Dismiss Plaintiff's IIED claim are **DENIED.**

26

### 4.    Defamation

To establish defamation in Tennessee, a plaintiff must show: "1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement." Sullivan v. Baptist Mem. Hosp., 995 S.W.2d 569, 571 (Tenn. 1999). If the plaintiff is a public figure, the plaintiff must show that the defendant acted with actual malice. See Press, Inc. v. Verran, 569 S.W.2d 435, 438 (Tenn. 1978). The Tennessee Supreme Court has adopted the New York Times v. Sullivan, 376 U.S. 254 (1964), actual malice rule:

> The occupant of any position in any branch of government who exercises any public function is subject to the New York Times rule as to all conduct in his official capacity or as to any conduct that might adversely affect his fitness for public office, if he has or "[appears] to the public to have, substantial responsibilities for or control over the conduct of governmental affairs."

Press, Inc., 569 S.W.2d at 441 (quoting Rosenblatt v. Baer, 383 U.S. 75, 85 (1966)).

The Tennessee Court of Appeals has held that a high school principal is a public figure under Tennessee's rule. See Junior-

27

<u>Spence v. Keenan</u>, No. 89-284-II, 1990 WL 17241, at *4 (Tenn. Ct. App. Feb. 28, 1990). A public school teacher, not an administrator, is also a public figure. <u>See</u> <u>Campbell v. Robinson</u>, 955 S.W.2d 609, 612 (Tenn. Ct. App. 1997).

Actual malice, the required showing for a public figure plaintiff, is:

> knowledge that the statement was false or reckless disregard of the truth or falsity of the statement. A reckless statement is one made by a person who entertains serious doubts about the truth of a statement. A mere failure to investigate without more is not sufficient to establish reckless disregard.

<u>Junior-Spence</u>, 1990 WL 17241, at *5 (internal citations removed).

Plaintiff alleges that Sheriff Riles released multiple public press releases maliciously defaming Plaintiff and attaches one of those releases to her Complaint as an exhibit.

Plaintiff also raises the citation to Tennessee's rape statute in the release as evidence that the statement was malicious. Defendants argue that the citation was simply a mistake. Although the citation in Defendant Riles' press release might be a simple error, it also plausibly supports an inference that Defendants were acting maliciously. A reference to possible sexual misconduct by an elementary school principal, even if subtle or

masked in the cloak of plausible deniability, reasonably supports
an inference of actual malice in the context of the hostility
Plaintiff alleges Defendants had for her.

Plaintiff alleges that all Defendants published defamatory
statements. However, she has only provided factual support for her
claim against Sheriff Riles. Plaintiff's defamation claims against
the other Defendants do not rise above "threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements." Iqbal, 556 U.S. at 678.

Defendant Riles' Motion to Dismiss Plaintiff's defamation
claim is **DENIED**. Defendants Salamon and Collins' Motions to Dismiss
Plaintiff's defamation claim are **GRANTED**.

### F.   Qualified Immunity

When a government official violates an individual's
constitutional or civil rights and causes harm, the Supreme Court's
"qualified immunity" doctrine holds that official may be held
civilly liable only when the official violated a "clearly
established right." Mullenix v. Luna, 577 U.S. 7, 11, (2015). A
right is clearly established if it is "sufficiently clear that
every reasonable official would have understood that what he is
doing violates that right." See id. A plaintiff need not show "an
earlier decision that is directly on point," but "'existing
precedent' must place the contours of the right 'beyond debate.'"

29

Josephson v. Ganzel, 115 F.4th 771, 789 (6th Cir. 2024) (quoting Mullenix, 577 U.S. at 12).

In the Sixth Circuit, the "general preference" is to resolve issues of qualified immunity at summary judgment, not at the 12(b)(6) motion to dismiss stage of litigation. Guertin v. State, 912 F.3d 907, 917 (6th Cir. 2019) In fact, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." Wesley v. Campbell, 779 F.3d 421, 433–34 (6th Cir. 2015) ("Although...entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest possible point...that point is usually summary judgment.").

As the Sixth Circuit has recently reaffirmed, "even though we retain jurisdiction over this type of appeal, this Court generally denies qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief." Cooperrider v. Woods, No. 24-5351, 2025 WL 427283, at *10 (6th Cir. Feb. 7, 2025) (quoting Marvaso v. Sanchez, 971 F.3d 599, 606 (6th Cir. 2020)).

Defendants argue that they are entitled to qualified immunity because Plaintiff's Complaint does not establish a plausible constitutional claim. See Crawford v. Tilley, 15 F.4th 763-65 (6th Cir. 2021). (See ECF No. 18-1 at 12; 20-1 at 4.) Because the Court

30

has determined that Plaintiff's Complaint states plausible constitutional claims against Riles, Salamon, and Collins, that argument fails. See supra IV.D.1-2.

Although Plaintiff has plausibly alleged violations of clearly established constitutional rights,[1] Defendants have not presented arguments on the ultimate question of qualified immunity: whether "existing precedent" placed "the contours of the right" that Defendants allegedly violated in this specific case "beyond debate." See Josephson, 115 F.4th at 789. That question is best addressed after discovery and with the benefit of briefing by the parties.

 Because granting a motion to dismiss on the basis of qualified immunity is "generally inappropriate" in the Sixth Circuit, and because doing so in this case would also be inappropriate, the Court reserves ruling on Defendants' qualified immunity arguments at this time. See Wesley, 779 F.3d at 433-34.

## V.   Conclusion

Defendants' Motions to Dismiss (ECF Nos. 18, 20) are **GRANTED IN PART AND DENIED IN PART** as follows: All of Defendants' Motions to Dismiss Plaintiff's claims under the substantive due process clause of the Fourteenth Amendment are **GRANTED**. Defendant Fayette

---

[1] See Donovan, 105 F.3d at 298; Webb, 789 F.3d at 659; supra IV.D.1-2.

31

County's Motion to Dismiss is **DENIED** on the federal claims, but **GRANTED** on the state law claims. Defendant Riles' Motion to Dismiss is **GRANTED** on the official capacity claims, but **DENIED** on the federal and state individual capacity claims. Defendants Collins and Salamon's Motions to Dismiss are **GRANTED** on the state defamation claim, but **DENIED** on Plaintiff's other federal and state individual capacity claims. Plaintiff's request for leave to amend her Complaint is **DENIED**.

SO ORDERED this _26th_ day of February, 2025.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE